## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRIAN MCINTOSH,            )
                                )
           Plaintiff,     )
                                )
        v.            )    Civil No. 3:21-cv-169
                                )    Judge Stephanie L. Haines
LOCKHEED MARTIN,        )
                                )
           Defendant.   )

## OPINION

Pending before the Court is a Motion for Summary Judgment (ECF No. 27), filed by Defendant, Lockheed Martin, to dismiss Plaintiff Brian McIntosh's Complaint (ECF No. 1). McIntosh asserts that Lockheed Martin violated his civil rights under the Americans with Disabilities Act ("ADA") by discriminating and retaliating against him. McIntosh seeks a judgment in his favor in excess of $150,000.00 for emotional distress, pain and suffering, personal injury damages, economic loss, lost wages and benefits, lost future earnings, and lost future earning capacity.

### I.      Jurisdiction and Venue

Subject matter jurisdiction for this lawsuit exists under 28 U.S.C. §§ 1331 and 1343 because the district courts have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States to recover damages because of a deprivation of any right or privilege of a citizen of the United States. Venue is proper under 28 U.S.C. §1391(b) because a substantial portion of the events giving rise to the claims occurred in the Western District of Pennsylvania.

## II.    Introduction

### A.    Procedural History

McIntosh filed his verified Complaint (ECF No. 1) for employment discrimination against Lockheed Martin on September 28, 2021.  His Complaint included as an attachment the Equal Employment Opportunity Commission ("EEOC") Notice of Right to Sue letter (ECF No. 1-1), signifying McIntosh had exhausted his administrative remedies.  Lockheed Martin filed its Answer (ECF No. 6) on December 13, 2021, and the parties proceeded to participate in discovery.  At the close of discovery, Lockheed Martin moved for Summary Judgment (ECF No. 27), and filed a Brief in Support (ECF No. 28), a Concise Statement of Material Facts (ECF No. 29), and an Appendix (ECF No. 30).  In turn, McIntosh filed a Response in Opposition to the Motion for Summary Judgment (ECF No. 31).  Attached to McIntosh's Response was a 300-page "Exhibit" with various records including deposition transcripts, witness statements, medical records, and human resources documents (ECF No. 31-1).  Also attached to the Response was an "Appendix" that was the Responsive Concise Statement of Material Facts (ECF No. 31-3).  The matter is ripe for disposition.

### B.    Factual Background[1]

On or about September 8, 1997, Lockheed Martin hired McIntosh as Machinist B in its Johnstown, Pennsylvania facility.  ECF No. 29, ¶ 1; ECF No. 30-1, p. 11 (LOCKHEED000159). After a history of legal and work-related discipline infractions,[2] McIntosh was provided with a "Last Chance Agreement".  ECF No. 29, ¶14; ECF No. 30-1, p. 31 (LOCKHEED0002940295). The Last Chance Agreement allowed McIntosh to continue working at Lockheed Martin contingent upon agreeing to remain in compliance with all company rules.  Any violation of any

---

[1]  The facts set forth in this section are undisputed unless otherwise noted.
[2]  *See* ECF No. 30-1, pp. 3-5, 23-26, 33, 34-37.

term of the Agreement would result in McIntosh's termination.  ECF No. 30-1, p. 31.  Also included in the terms of the Last Chance Agreement was that the Agreement would remain in effect for the duration of McIntosh's employment with Lockheed Martin.  *Id.*; ECF No. 29, ¶ 16. McIntosh, however, argues that the Last Chance Agreement was voided as part of a July 14, 2020, Grievance Settlement (#20-10) so that it would not retroactively be used for disciplinary actions associated with the May 1, 2020, disciplinary incident, the incident at issue in this litigation.  ECF No. 31-3, ¶ 16; ECF No. 31-1, p. 73.[3]

On or about April 15, 2020, the Pennsylvania Secretary of Health mandated that all employers require their employees to wear masks and maintain social distancing while on the worksite to combat the transmission of COVID-19.  ECF No. 29, ¶ 29; ECF No. 30-4 (Letter "Exhibit 4").  Because Lockheed Martin is a defense contractor it was considered an "essential business" and was required to adhere to the mandate from the Commonwealth.  ECF No. 29, ¶ 30. On April 20, 2020, McIntosh submitted a Work-Related Modification Request pursuant to Lockheed Martin's Reasonable Accommodation Policy.  ECF No. 29, ¶ 34; ECF No. 30-1, p. 27 (LOCKHEED000258).  McIntosh's Modification Request stated, "PTSD [Post Traumatic Stress Disorder].  Mask brings back 18 months of memories when I had to cover my face on mission."[4] ECF No. 30-1, p. 27.  On April 21, 2020, McIntosh was sent home with pay because he refused to wear a mask and Lockheed Martin needed time to review his accommodation request.  ECF No. 29, ¶ 36.  On April 22, 2020, Lockheed emailed McIntosh a statement of accommodation that Lockheed would require McIntosh to wear a face shield "to and from your work area for breaks

---

[3]  "The Company and the Union mutually agreed upon a full and final settlement of Grievance #20-10. The Last Chance Agreement (LCA) signed April 14, 2016 by the affected Employee McIntosh, Brain [sic] L. LM#172147, will not be used for disciplinary actions in the May 1, 2020 incident and which resulted in Grievance #20-08." Dated July 14, 2020.  ECF No. 31-1, p. 73.
[4]  McIntosh never told Supervisor Wayne Davis that he had Post Traumatic Stress Disorder ("PTSD").  ECF No. 29, ¶ 41.

and at the beginning and end of the shift and keep [your] area cordoned off like you had on Monday to prevent entry…" ECF No. 30-1, p. 16 (LOCKHEED 000229); ECF No. 29, ¶ 37.  Both parties agreed on this arrangement and McIntosh returned to work.

On May 1, 2020, McIntosh entered the Johnstown Lockheed Martin Facility without a face shield.  ECF No. 29, ¶ 42.  Security Officer Melius stopped McIntosh at the entry because he was not wearing a face covering.  ECF No. 29, ¶ 43.  McIntosh yelled at Melius and said he would not wear a face covering and proceeded to his work-station.  ECF No. 29, ¶ 44.  Afterward Wayne Davis, the General Manager, Site Director (ECF No. 31-1, p. 235 (Davis Deposition)),[5] went to McIntosh's work-station to discuss the masking situation and McIntosh raised his voice and yelled vulgarities at him.  ECF No. 29, ¶¶ 45-46.  McIntosh said Governor Wolf was violating his rights and he was going to "sue [Davis'] ass."  *Id.*  Human resources employee Jim Porter and Security Officer Robert Scholl came to help diffuse the situation.  ECF No. 29, ¶¶ 48, 49.  McIntosh stated he was leaving for the day and wanted to get paid.  ECF No. 29, ¶¶ 50, 52.

McIntosh's version of the facts differs.  McIntosh states that Davis harassed him even before masking became an issue, though he doesn't state definitively that the harassment was discriminatory and motivated because of his PTSD.  ECF No. 31-1, p. 31, depo. p. 114, ¶ 10-13.  He also states that Davis harassed him about wearing a mask before May1, 2020.[6]  But there is no evidence to support that Davis knew then that McIntosh suffered from a disability and that was the reason he could not wear a mask.  In support of McIntosh's harassment claims, Mark Yuzwa,

---

[5] Davis wrote the incident up for Lockheed Martin records.  *See* ECF No. 30-1, pp. 23-26.

[6] According to McIntosh's Deposition (ECF No. 31-1, pp. 2-69), McIntosh states that around April 2016 he informed Rich Hudock, Kevin Smith, and Brody Smith, employees of Lockheed Martin of his PTSD in a meeting because he was missing work for medical appointments.  ECF No. 31-1, p. 31.  He later told Pat McCann in March 2020 because it was the reason he could not wear a mask.  *Id.*  On April 21, 2020, McIntosh told people orally that he could not mentally wear a mask, but Davis was sending people and security to harass him to wear a mask.  *Id.* at depo pp. 125-26.  That same day McIntosh told McCann that Davis needed to be told to back off, "that it was harassment, it was a hostile work environment."  *Id.* at p. 33, depo. p. 124.

another employee of Lockheed Martin, attests to the fact that Davis often tried to provoke McIntosh because McIntosh was the Union President and negotiating shop steward.  ECF No. 31-1, p. 70, ¶ 4.  Yuzwa states that Davis treated McIntosh poorly.  ECF No. 31-1, p. 70,  ¶ 5.  He also states that he (Yuzwa) was confronted by Davis for not wearing a mask correctly.  Yuzwa says he swore at Davis and was sent on unpaid leave for a week, but was not suspended like McIntosh.  ECF No. 31-1, p. 70, ¶ 6.  Another employee of Lockheed Martin, Dale Berkebile, attests similarly;  Davis tried to provoke McIntosh and treated him poorly.   ECF No. 31-1, pp. 80-81, ¶¶ 4-5.  Lockheed Martin states that Wayne Davis had not spoken with McIntosh about his accommodation or wearing a face shield prior to May 1, 2020, and therefore, he had not been harassing him about a face mask as McIntosh claims.  ECF No. 29, ¶ 55.

McIntosh asserts that he walked into work on May 20, 2020, without a face shield but when Melius told him he needed to wear a face covering, McIntosh returned to his car and put on his face-shield to re-enter the building.  ECF No. 31-3, ¶¶ 42, 44.  McIntosh also states that when Davis approached his work-station that day it was to harass him.  "Mr. Davis told Plaintiff that Plaintiff was going to do what he wanted him to do or that he would fire him on the spot and that he didn't know what or who Plaintiff thought he was, but that this was all in his head and he was done with it."  ECF No. 31-3, ¶¶ 45-47.

Patrick McCann, Human Resources Business Partner, investigated the May 1, 2020, dispute and suspended McIntosh on May 5, 2020, because of the verbal altercation that McIntosh had with Davis on the plant floor.  ECF No. 29, ¶¶ 57-60; ECF No. 30-3, pp. 42-43 (Depo. Pat McCann).[7]  According to the Lockheed Martin/Union Collective Bargaining Agreement the first 30 days of the suspension are to be unpaid.  McIntosh was paid his usual rate after the first month

[7] Lockheed Martin states that McIntosh was aware and had been trained on workplace policies. *See* ECF No. 30-1, pp. 6, 9-10, 17-22.

and during the rest of the suspension until he resigned.  ECF No. 29, ¶ 61.  On or about July 15, 2020, following the investigation, Lockheed Martin notified McIntosh that he needed to participate in a Fitness for Duty Assessment and report the results to the company as a condition to returning to work.  ECF No. 29, ¶ 63; ECF No. 30-1, pp. 3-5.  McIntosh participated in the assessment on August 19, 2020, but refused to release the results to Lockheed.  ECF No. 29, ¶¶ 64-69.  McIntosh admits that he refused to submit the assessment to Lockheed Martin because he already had been singled out for having PTSD and he didn't want to give Lockheed any more information.  ECF No. 31-3, p. 6, ¶ 67.

On September 10, 2020, McIntosh resigned from his employment at Lockheed Martin. ECF No. 29, ¶ 70.  McIntosh's letter of resignation states, "I am terminating my position of almost 24 years with Lockheed Martin Aeroparts due to the continual harassment and hostile work environment that I was subjected to during the last year… and [it was] never properly addressed." ECF No. 30-1, p. 7-8.   Lockheed asserts that McIntosh was not terminated, but resigned of his own volition.  ECF No. 29, ¶ 72.  McIntosh filed a discrimination claim with the EEOC and on July 19, 2021, the EEOC issued a Recommendation for Closure finding that Lockheed Martin did not discriminate against McIntosh.  ECF No. 29, ¶73; ECF No. 30-1, p. 2 (LOCKHEED 000003). The next day the EEOC Right to Sue notice issued.  ECF No. 1-1, p. 1-3.

As part of his pleadings, McIntosh includes a few medical progress notes that document mental health therapy he received for his PTSD after his termination from Lockheed Martin.  ECF No. 30-1, pp. 307-11.  Lockheed Martin neither disputes that McIntosh suffers from PTSD, nor provides any documentation that notice of any disability was part of his employment record. Though McIntosh states the discrimination and retaliation of Lockheed Martin exacerbated his

PTSD and led to him attempting suicide, ECF No. 2, ¶ 26, the medical records state, "He denied both suicidal and homicidal thinking." ECF No. 31-1, p. 311.

## III.   Standard of Review

In relevant part, Rule 56 provides:

> A party may move for summary judgment, identifying each claim or defense...on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by...citing to particular parts of materials in the record,...or...showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(a), (c).

After discovery and upon a motion, Rule 56 requires the entry of summary judgment against a party who "'fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.'" *Marten v. Godwin,* 499 F.3d 290, 295 (3d Cir. 2007) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)). An issue of material fact is in genuine dispute if the evidence is such that a reasonable jury could decide it in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.,* 480 F.3d 252, 256 (3d Cir. 2007) (citing *Celotex Corp.,* 477 U.S. at 322-26; *Anderson,* 477 U.S. at 248-52)).

Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond his or her pleadings and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue of material fact for trial. *See Celotex,* 477 U.S. at 324. The nonmoving party cannot defeat a well-supported motion for summary judgment by simply reasserting unsupported factual allegations contained in his or her pleadings. *See Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3d Cir. 1989). However, in deciding a Rule 56 summary judgment motion, the Court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences and resolve all doubts in its favor. *See Woodside v. Sch. Dist. of Phila. Bd. of Educ.,* 248 F.3d 129, 130 (3d Cir. 2001); *Santini v. Fuentes,* 795 F.3d 410, 416 (3d Cir. 2015) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). The benefit of the doubt will be given to allegations of the non-moving party when in conflict with the moving party's claims. *See Bialko v. Quaker Oats Co.*, 434 F. App'x 139, 141 n.4 (3d Cir. 2011) (citing *Valhal Corp. v. Sullivan Assocs.*, 44 F.3d 195, 200 (3d Cir. 1995)).

**IV.    Analysis**

McIntosh asserts that he was subject to a hostile work environment because he had to endure regular and pervasive harassment due to his disability. ECF No. 1, ¶¶ 34-35. He claims he suffered embarrassment, humiliation, emotional distress, and disruption to his life. *Id.* ¶ 37. McIntosh further asserts that Lockheed Martin failed to engage in interactive discussion of his disability and failed to reasonably accommodate him. *Id.* ¶ 41. Finally, McIntosh states that he suffered an adverse action when Lockheed Martin terminated him after he requested accommodations for his qualified disability. *Id.* ¶¶ 41, 51. McIntosh brings this civil action under two theories of liability under the ADA, discrimination and retaliation.

Lockheed makes three arguments in favor of summary judgment.  First, Lockheed asserts that McIntosh failed to prove the elements of the disability discrimination and the retaliation claims.  Lockheed states the essential elements of the claims were not supported by evidence.  Second, Lockheed asserts that McIntosh did not prove Lockheed failed to reasonably accommodate his disability.  Third, it asserts that McIntosh failed to establish the requisite elements to prove the hostile work environment.  The Court will address the issues below.

### A.    Count I – ADA Disability Discrimination

The ADA prohibits covered entities from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  The ADA considers a person disabled if they: "(A) [have] a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) [have] a record of such an impairment; or (C) [is] regarded as having such an impairment."  42 U.S.C. § 12102(1).  To be an individual with a disability, an individual is only required to satisfy one prong.  *See* 29 C.F.R. app. § 1630.2(g)(2).  In this case McIntosh asserts that he is a disabled person because he suffers from PTSD.

To state a claim for relief under the ADA, a plaintiff must allege facts demonstrating "(1) [s/]he is a disabled person within the meaning of the ADA; (2) [s/]he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) [s/]he has suffered an otherwise adverse employment decision as a result of discrimination."  *Eshleman v. Patrick Indus.,* 961 F.3d 242, 245 (3d Cir. 2020) (internal quotations omitted).  McIntosh states that he can perform the essential functions of his job, though having PTSD, but that he suffered adverse actions of his employer by being harassed, suspended without

pay, and constructively discharged.  Lockheed Martin did not argue the qualifications of McIntosh's disability, or whether McIntosh could perform the essential functions of his job.  It's sole focus was on whether it took any adverse action against McIntosh because of discriminatory animus.  It claims there is no evidence of any action that is significant enough to be considered an adverse action.[8]  ECF No. 28, p. 8.  An adverse or tangible employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

McIntosh asserts that Davis regularly harassed him and had been harassing him about masking before May 1, 2020.  Then, on May 1, 2020, after McIntosh submitted an April 21, 2020, accommodation request for Lockheed to waive the mask mandate, as it pertained to him because he suffered from PTSD, Davis came to his work-station to harass him.  Davis said, "[I]t was all in his head and he was done with it."  Fellow employees said that Davis treated McIntosh poorly, though they did not link the poor treatment to McIntosh's PTSD or discrimination.  After the May

---

[8]  The Court notes that it need not employ the *McDonnell Douglas* burden-shifting analysis here because Lockheed Martin never asserts a legitimate reason for an adverse action but instead denies that any adverse action took place. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973), *holding modified by Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993) ("The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection.... Here petitioner has assigned respondent's participation in unlawful conduct against it as the cause for his rejection. We think that this suffices to discharge petitioner's burden of proof at this stage and to meet respondent's prima facie case of discrimination."); *see also Mascioli v. Arby's Rest. Grp., Inc.,* 610 F. Supp. 2d 419, 433-34, 437 (W.D. Pa. 2009) (stating when the plaintiff establishes a prima facie case of discrimination, a presumption arises that the employer unlawfully discriminated against the employee, shifting the burden of production to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." Once the defendant offers a legitimate nondiscriminatory reason for the challenged conduct at issue, "the *McDonnell Douglas* framework—with its presumptions and burdens'—disappear[s], ... and the sole remaining issue [i]s 'discrimination *vel non.*' The plaintiff, thus, has the ultimate burden of proving by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.) (citations omitted).

1, 2020, altercation and upon Patrick McCann's investigation, McIntosh was suspended from work on May 5, 2020, and the first month of suspension was unpaid.

"[A]n adverse employment action is one which is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Jakomas v. City of Pittsburgh*, 342 F. Supp. 3d 632, 643 (W.D. Pa. 2018). When an employee's salary, reporting requirements, and general duties remain the same, there is typically insufficient evidence of an adverse employment action. *See Fiorentini v. William Penn Sch. Dist.*, 150 F. Supp. 3d 559, 567 (E.D. Pa. 2016). That said, a change in employment status, responsibilities, or duties that does not create a reduction of pay or benefits may still qualify as an adverse employment action. *See Dilenno v. Goodwill Indus., of Mid-Eastern Pa.*, 162 F.3d 235, 236 (3d Cir. 1998) (assigning an employee a job that employer knew she could not perform in retaliation for a sexual harassment claim). The core inquiry is whether a reasonable jury could determine that the employee's employment was substantially worsened. *See id.* at 236.

In this case it is enough that McIntosh asked for a mask accommodation for his PTSD, engaged in an altercation about masking where his supervisor arguably made a discriminatory remark, and was suspended for a month without pay (though it was dictated by the Collective Bargaining Agreement) because of the altercation. Given all these factors the Court determines that he suffered an adverse action and that he has pled a prima facie case of disability discrimination.[9] Being prevented from reporting to work and docked a month's pay altered

---

[9] The suspension with pay and the request for a fit for duty assessment, however, are not adverse actions as they do not affect a "serious and tangible" alteration of the "terms, conditions, or privileges of employment," *See Storey v. Burns Intern. Sec. Services,* 390 F.3d 760, 764 (3d Cir. 2004). *See also Jones v. Se. Pa. Transp. Auth.,* 796 F.3d 323, 326 (3d Cir. 2015). *See, e.g., Jones v. SEPTA,* No. 12-CV-6582-WY, 2014 WL 3887747, at *4 (E.D. Pa. Aug. 7, 2014), *aff'd sub nom. Jones v. Se. Pa. Transp. Auth.,* 796 F.3d 323 (3d Cir. 2015) (The District Court held that Jones's suspension with pay did not constitute an adverse employment action under Title VII).

McIntosh's compensation and the privileges of his employment.  Thus, it was an adverse action taken against him arguably because of his disability.

### i. Reasonable Accommodation Claim

In Lockheed's Motion for Summary Judgment it provided that to establish a prima facie case of discrimination under the ADA for failure to reasonably accommodate, McIntosh must show that (1) he is "disabled" as defined  by the ADA; (2) defendant had notice of his disability; (3) McIntosh can perform the essential functions of his position with a reasonable accommodation; and (4) defendant failed to provide him with a reasonable accommodation.  *See Bass v. UPMC Horizon*, No CA 11-308, 2013 WL 411451, at \*4 (W.D. Pa. Feb 1, 2013); *Johnson v. McGraw-Hill Cos.*, 451 F. Supp. 2d 681, 701 (W.D. Pa. 2006).  An interactive process between employer and employee is recommended to determine the appropriate accommodation.  *See McCall v. City of Philadelphia*, No. CIV.A. 11-5689, 2013 WL 5823873, at \*23 (E.D. Pa. Oct. 29, 2013), *aff'd*, 629 F. App'x 419 (3d Cir. 2015).

Elements (1) and (3) are satisfied in this case.  As stated previously, McIntosh suffers from PTSD and he can adequately perform his job responsibilities.  The Court also finds element (2) is satisfied because the accommodation request to Lockheed cited PTSD as the reason for McIntosh's need to forgo the face mask.   But the Court finds that Lockheed  provided  a  reasonable accommodation and therefore element (4) is not satisfied.  McIntosh was to wear a face shield upon entry and exit to the building and to cordon off his work-space from others while he worked mask-free.  Although there is no record evidence of a meeting or conversation between McIntosh and  Lockheed  about  appropriate  accommodations,  the  Court  finds  it  sufficient  that  the accommodation request was made and one day later a reasonable accommodation was developed and offered to McIntosh.  Neither party asserts facts that the terms of the accommodations were

disagreeable or unreasonable. McIntosh returned to work after the accommodations were in place. McIntosh claims that the accommodation was offered but it was not followed because McIntosh was harassed about wearing a mask. This factual assertion is more appropriately addressed under the hostile work environment claim. The Court finds the elements of a failure to accommodate claim are not satisfied and there is no genuine issue of fact and as such the claim is dismissed as a matter of law.

### ii. Hostile Work Environment Claim

"A claim for hostile work environment based on disability requires an evidentiary showing that, inter alia, the plaintiff is a qualified individual with a disability under the ADA." *Amorosi v. Molino,* No. 06–5524, 2009 WL 737338, at *7 (E.D.Pa. Mar. 19, 2009) (citing *Walton v. Mental Health Ass'n of Se. Pa.,* 168 F.3d 661, 667 (3d Cir.1999)). As stated above, McIntosh qualified as an individual with a disability. To establish a prima facie hostile work environment claim under Title VII, a plaintiff must show "(1) the employee suffered intentional discrimination because of their [disability]; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person … in that position; and (5) the existence of respondeat superior liability." *Burgess v. Dollar Tree Stores, Inc.,* 642 F. App'x 152, 154–55 (3d Cir. 2016) (citing *Huston v. Procter & Gamble Paper Prods. Corp.,* 568 F.3d 100, 104 (3d Cir.2009)).

Lockheed asserts that the record lacks evidence that McIntosh suffered harassment or a hostile work environment due to his disability of PTSD. While the Court finds some potential evidence of harassment/hostile work environment in the alleged comments by Davis during the May 1, 2020, altercation, it agrees with Lockheed that McIntosh has not presented evidence of pervasive or regular harassment as it pertains to McIntosh's PTSD or his masking accommodations

for his PTSD. "To be 'severe or pervasive,' the workplace must be 'permeated with discriminatory intimidation, ridicule, and insult[ ] that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *McLintock v. City of Philadelphia*, 504 F. Supp. 3d 411, 429 (E.D. Pa. 2020), *aff'd,* No. 20-3453, 2022 WL 395995 (3d Cir. Feb. 9, 2022). McIntosh has only provided the May 1, 2020, incident that is arguably discriminatorily motivated, which can hardly support a pervasive or severe atmosphere of intimidation, ridicule, or insult. Before the May 1, 2020, altercation there is no evidence that Davis was aware of McIntosh's disability so any alleged harassment cannot be attributable to disability discrimination. Harassment alleged that was motivated because McIntosh was the union's representative, or simply because Davis didn't like him does not provide the basis for an ADA claim because in those instances McIntosh is not part of a protected class. That said, a one-time altercation over masking would not detrimentally affect a reasonable person in the same position. Thus, McIntosh has not provided sufficient evidence to support a prima facie case of hostile work environment and the claim will be dismissed.

### iii.   Constructive Discharge Claim

Though McIntosh doesn't formally argue constructive discharge in a separate count, he possibly argues it as an adverse action to support the third element of his discrimination claim. Lockheed prophylactically evaluates the claim and asserts that McIntosh does not satisfy the standard test for such a claim. "A person is constructively discharged when an employer permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign." *Bearley v. Friendly Ice Cream Corp.,* 322 F. Supp. 2d 563, 577 (M.D. Pa. 2004) (citing *Duffy v. Paper Magic Group, Inc.,* 265 F.3d 163, 167 (3d Cir.2001) (citing *Spangle v. Valley Forge Sewer Auth.,* 839 F.2d 171, 173 (3d Cir.1988)).

The facts state that McIntosh was suspended from work in May 2020, and was paid while suspended beginning sometime in June 2020 going forward.  On July 15, 2020, he was asked to complete a Fit for Duty Assessment as a condition to returning to work and Lockheed scheduled the appointment for him on July 22, 2020.  ECF No. 30-1, p. 3.  McIntosh completed the assessment on August 19, 2020, but refused to allow the findings to be released to Lockheed Martin.  ECF No. 30-1, p. 29.  On September 11, 2020, McIntosh resigned stating it was because of the continual harassment and hostile work environment he endured for a year.  ECF No. 30-1, p. 7-8.

Similar to the Court's analysis for hostile work environment, the Court finds that McIntosh's work conditions were not such to support a claim of constructive discharge.  McIntosh describes only one incident of a potentially discriminatorily motivated argument with Wayne Davis that does not reach the threshold where a reasonable person would be compelled to resign. Furthermore, when McIntosh resigned he was home on paid suspension, and had been home for about five months so that there were no work interactions to cause him difficulty or unpleasantness. The circumstances surrounding McIntosh's resignation do not support a claim of constructive discharge and it will be dismissed.

**B.    Count II – ADA Retaliation**

Lockheed asserts that McIntosh failed to plead the requisite elements of a retaliation claim. To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that:  "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action."  *Selvato v. SEPTA*, 658 F. App'x 52, 56 (3d Cir. 2016) (quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir.1995)).  "To establish

the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Summy-Long v. Pennsylvania State Univ.,* 226 F. Supp. 3d 371, 416–17 (M.D. Pa. 2016), *aff'd,* 715 F. App'x 179 (3d Cir. 2017).

McIntosh engaged in a protected activity of seeking a mask accommodation for his PTSD. About a month later, Lockheed, after a conflict about McIntosh's masking, suspended him without pay for a month. Issues of fact exist as to the motivation for the suspension and there is evidence of record to support a prima facie case of retaliation. Lockheed argues that McIntosh cannot claim that he was terminated in retaliation for his accommodation request because it is undisputed that the accommodation request was fulfilled and McIntosh voluntarily resigned. These facts do not affect the reasoning behind the Court's findings. The temporal proximity between the masking conflict and McIntosh's suspension without pay are sufficient to support a prima facie case of retaliation.

## V.      Conclusion

Viewing the facts in the light most favorable to Plaintiff, as the nonmoving party, and drawing all reasonable inferences and resolving all doubts in Plaintiff's favor, Lockheed Martin's Motion to Dismiss (ECF No. 27) will be GRANTED in part and DENIED in part as follows:

- The Motion for Summary Judgment as to Failure to Accommodate is GRANTED;

- The Motion for Summary Judgment as to the Hostile Work Environment claim is GRANTED;

- The Motion for Summary Judgment as to the claim of Constructive Discharge is GRANTED;

- The Motion for Summary Judgment as to the Disability Discrimination claim is DENIED; and

- The Motion for Summary Judgment as to the claim of Retaliation is DENIED.

16

The Court finds that genuine issues of material fact exist as to Plaintiff's disability discrimination and retaliation claims.

An appropriate Order will be entered.


Dated: _August 9, 2023_                    _Stephanie L. Haines_

                                          Stephanie L. Haines
                                          United States District Judge